(C.D. 2280)

COLIN HALL CLOTHES, LTD. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided August 14, 1961)

*Nemoroff, Jelline, Danzig & Paley* (*Jerome Dienstag* of counsel) for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Murray Sklaroff* and *Margaret M. Vallerie,* trial attorneys), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges; RICHARDSON, J., dissenting

JOHNSON, Judge: The merchandise involved in this case consists of woven wool fabrics, imported from England and entered for consumption on July 25, 1957. It was assessed with duty at 37½ cents per pound and 45 per centum ad valorem under paragraph 1109(a) of the Tariff Act of 1930, at the nonquota rate established by the Presidential proclamation of September 28, 1956, T.D. 54212, pursuant to the proviso attached to the modification of the rates provided for in the General Agreement on Tariffs and Trade, T.D. 51802. It is claimed that the merchandise is properly subject to duty at the quota rate of 37½ cents per pound and 25 per centum ad valorem.

Paragraph 1109(a), as modified, provides:

[1109(a)] Woven fabrics, weighing more than four ounces per square yard, wholly or in chief value of wool, regardless of value_____ 37½¢ per lb. and 25% ad val.

Said paragraph is subject to the proviso following paragraph 1108 which reads:

NOTE: The United States reserves the right to increase the ad valorem part of the rate applicable to any of the fabrics provided for in item 1108 or 1109(a) of this Part to 45 per centum ad valorem on any of such fabrics which are entered in any calendar year in excess of an aggregate quantity by weight of 5 per centum of the average annual production of similar fabrics in the United States during the 3 immediately preceding calendar years.

Pursuant to this proviso, the President proclaimed, in T.D. 54212, that—

* * * the ad valorem part of the rate which shall be applied to the said fabrics described in the seventh recital of this proclamation, *entered, or withdrawn from warehouse, for consumption in excess of the quantity specified* in clause (a) of that recital, or in excess of a quantity notified to the Secretary of the Treasury pursuant to clause (b) of that recital, shall be 45 per centum ad valorem. [Italics supplied.]

Thereafter, on May 24, 1957, the President notified the Secretary of the Treasury that for the calendar year of 1957 the quantity in excess of which the ad valorem rate would be 45 per centum ad valorem was 14,000,000 pounds. (T.D. 54370.)

In the instant case, counsel have stipulated that customs officials determined that the quota was filled at 4:07 p.m. on July 25. The collector's memorandum states:

Note: B/L 3433 dated 12/3/57 states that instant entry was filed after quota was filled.

This memorandum was not offered in evidence by either party. Presumably, however, customs officials determined that 14,000,000 pounds had been entered, or withdrawn from warehouse, for consumption by the stipulated time, 4:07 p.m.

At the trial, two witnesses testified for the plaintiff: George Francis Kehm and Robert E. Martin, employees of H. W. Robinson Freight Corp., customs broker, and two witnesses testified for the defendant: Harry W. Weiner, supervisory entry officer in the United States Customs Service at International Airport, and Charles Gazzaniga, supervisor in the cashier's office there.

According to the testimony of these witnesses, entry papers submitted at International Airport are placed in a metal box in the collector's office there. They are then picked up by entry clerks who check them for errors, omissions, and proper rates of duty. They see that the entry is made by the proper party and that the proper form is used. In the case of more than one package, they have to designate which package is to be held for examination by the appraiser. They see that the check is in order, the carrier certificate properly indorsed, and the invoice properly made out. If the entries are correct, they are placed in one basket on an entry clerk's desk and, if there is an error, they are placed in another to be returned to the broker. The correct entries are gathered up by stamping clerks who stamp them in consecutive order. They are then submitted to the cashier with the proper check. He examines the check to see that it is made out properly, perforates the permit "Paid," signs the permit and the receipt copy for the broker, and time-stamps the quota copy.

The witnesses estimated that on a busy day it might take from 15 minutes to two hours for an entry to be completely processed and time-stamped.

The entry papers in the instant case were prepared by the customs broker and were deposited, together with the required documents and the check, in the metal box in the collector's office prior to 4:07 p.m. on July 25, 1957. After the regular course of procedure had been followed, the cashier perforated the permit "Paid" and time-stamped the quota copy 4:20 p.m. (defendant's exhibit A). The quota copy was eventually given to the quota section of the Bureau of Customs.

It is plaintiff's claim that the merchandise was *entered* at the time the documents were presented to the collector, which was prior to 4:07 p.m., and that, therefore, it is subject to duty at the quota rate. Defendant contends that goods cannot be considered entered for the

purpose of quota priority until the collector has had an opportunity to examine the papers and accept or reject them and that, in the instant case, the merchandise was not entered for quota purposes until after official acceptance of the papers and the deposit of duties, which did not occur until 4:20 p.m., by which time the quota had been filled.

It is to be noted first of all that this is not a seasonal-rate quota but a quantitative quota and that the quota is exhausted as soon as 14,000,000 pounds have been entered, or withdrawn from warehouse, for consumption. Therefore, quantity is controlling, and time is pertinent only insofar as it is determined that the quota quantity has been entered by a certain time.

The courts have held that merchandise is not considered entered, or withdrawn, for consumption until the transaction is completed by the payment of estimated duties and the issuance of a delivery permit. *Sucrest Corporation* v. *United States*, 31 C.C.P.A. (Customs) 220, C.A.D. 275; *United States* v. *Mussman & Shafer, Inc.*, 40 C.C.P.A. (Customs) 109, C.A.D. 506; *F. J. Benkart & Co., Inc.* v. *United States*, 2 Cust. Ct. 466, C.D. 177; *Dorf International, Ltd.* v. *United States*, 37 Cust. Ct. 436, Abstract 60406; *Cities Service Oil Co.* v. *United States*, 40 Cust. Ct. 558, Abstract 61956.

Section 315 (a) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1953, provides:

(a) Except as otherwise specially provided for, the rate or rates of duty imposed by or pursuant to this Act or any other law on any article entered for consumption or withdrawn from warehouse for consumption shall be the rate or rates in effect when the documents comprising the entry for consumption or withdrawal from warehouse for consumption and any estimated or liquidated duties then required to be paid have been deposited with the appropriate customs officer in the form and manner prescribed by regulations of the Secretary of the Treasury, * * *.

In Senate Report No. 632, made in connection with the said amendment to the tariff act (U.S. Code, Congressional and Administrative News, 83d Congress, 1st session, vol. 2, pp. 2283, 2287), it is noted that the tariff act has been amended many times as a result of trade agreements, congressional action, and court decisions, but no specific time during the importing process has been established for the application of duty and court decisions have not been completely uniform. Therefore, it was proposed that subsection (a) of section 315 be amended to—

* * * make clear that merchandise is entered for consumption or withdrawn from warehouse for consumption, as the case may be, within the meaning of the various customs laws, proclamations, and regulations thereunder, when the documents comprising the entry for consumption or withdrawal from warehouse for consumption and any estimated or liquidated duties then required to be paid have been deposited with the appropriate customs officer in the form and manner prescribed by regulations of the Secretary of the Treasury. Under the amendment, the applicable rate of duty will be that in effect when the entry or with-

drawal has taken place by the performance of the acts referred to in the preceding sentence [with certain exceptions as to informal mail entries and merchandise entered for transportation in bond].

Pursuant to the amendment of section 315, *supra*, the Customs Regulations were amended to read as follows:

8.4 Preliminary examination of entry paper; making entry or withdrawal; applicable rate of duty; date of importation. * * *

\*     \*     \*     \*     \*     \*     \*

(d) Entry is made under * * * a formal consumption entry * * * when the specified form is properly executed and deposited, together with any related documents required by any provision of these regulations to be filed with such form at the time of entry, at the port or station with the customs officer designated to receive such entry papers and any duties or taxes required to be paid at the time of making such entry have been deposited with the customs officer designated to receive such monies. The rate or rates of duty applicable to merchandise entered under any such entry shall be the rate or rates in effect when the making of the entry as stated above is *completed*, except as provided for in section 315(a)(2), Tariff Act of 1930, as amended. [Italics supplied.]

From the record in the instant case, it is apparent that the cashier was the officer designated to receive monies and that he did not actually receive payment until 4:20 p.m. Therefore, the rate in effect at that time is the applicable one.

Even though in certain situations a time lapse between the presentation of the entry papers and the payment of duties to the designated official might work a hardship, it has been held that merchandise is not "entered" until such payment has been made. *F. J. Benkart & Co., Inc.* v. *United States, supra.* In that case, the entry was filed at about 1 o'clock on November 30, but it was not accepted and released until too late for the importer to pay the duties before the official closing hour of the customhouse. The court held that since the entry had not been completed by the payment of duties and issuance of a delivery permit, the goods were not "entered for consumption" on November 30 and were, therefore, not entitled to the lower rate in effect on that day.

Plaintiff contends, however, that, under section 12.50(a) of the Customs Regulations, an entry is filed when it is delivered to the collector in proper form together with a check for estimated duties and that the term "official acceptance" in section 12.50(e) refers to the time of receipt of such entry.

Section 12.50 of the Customs Regulations provides:

12.50 Quota Priority.—(a) Merchandise shall not be regarded as entered for purposes of quota priority until an entry therefor has been filed in proper form. Consumption entries and withdrawals for consumption covering quota commodities shall be accepted only during the official office hours when the customhouse is fully staffed and open for the transaction of all customs business.

(b) Merchandise covered by a mail entry or other informal entry shall be regarded as presented for purposes of quota priority when all requirements have been met for the preparation of such an entry.

(c) Merchandise entered for warehouse for which a withdrawal for consumption has been made in the manner stated in section 8.4(g) prior to the opening of any quota period may not be accorded any quota benefit which may become effective after the time of such withdrawal, even though the permit of delivery for the withdrawn merchandise is not delivered to the customs warehouse officer until after the effective date of the quota benefit.

(d) When it is anticipated that entries or withdrawals, or both, covering quantities sufficient to fill a quota will be presented at the opening of the quota period, no entry for consumption or withdrawal for consumption shall be accepted before 12 noon Eastern Standard Time at any port in the Eastern Standard Time belt, 11 a.m. Central Standard Time in the Central Standard Time belt, 10 a.m. Mountain Standard Time in the Mountain Standard Time belt, or 9 a.m. Pacific Standard Time in the Pacific Standard Time belt. All importers who are present to file entries or withdrawals when the quota opens shall be given equal opportunity to do so and, if necessary, special arrangements shall be made so that all such entries may be presented at the exact moment of the opening of the quota. No importer shall be permitted to present entries or withdrawals for a quantity in excess of the quota quantity. All entries and withdrawals so presented in proper form shall be considered to have been presented simultaneously, even though some time may be required for checking purposes.

(e) When any tariff-rate quota is nearing fulfillment, the exact date, hour, and minute of official acceptance shall be noted on each entry and withdrawal and reported to the Bureau. When any absolute quota is nearing fulfillment and it is necessary to secure Bureau approval before accepting entries or withdrawals thereunder, the time of presentation of each entry or withdrawal shall be reported to the Bureau.

(f) If quota-class merchandise is the subject of an application for release under an immediate delivery permit, the time of presentation of entry shall not precede the time when the importing carrier reaches the limits of the port where entry is to be made. See sections 8.4 and 8.59 of these regulations.

A reading of this section in its entirety shows that several different terms have been used, namely, "filed," "accepted," "presented," "official acceptance," and "presentation." In our opinion, they were not intended to be synonymous. Different procedures were provided to cover different situations. Subdivision (a) provides that no merchandise shall be considered for purposes of quota priority *until* an entry has been filed in proper form and that entries shall be accepted only during office hours. Subdivision (b) provides for mail and informal entries in accordance with the special provisions of section 315(a)(1) of the tariff act, as amended. Subdivision (c) provides that merchandise withdrawn from warehouse prior to the opening of a quota may not be accorded any quota benefit even though the permit of delivery is not delivered until after the effective date of the benefit. Subdivision (d) is concerned with the situation where it is anticipated that the quota will be filled at the opening of the quota period and, in such case, provides that all importers who are present when the

quota opens shall be given equal opportunity to present entries at the exact moment of opening. All such entries are considered as presented simultaneously, even though they must be checked later. Subdivision (e) provides for cases where a tariff-rate quota is nearing fulfillment. Where the quota is not an absolute one, the exact date, hour, and minute of *official acceptance* of the entry is to be noted and reported to the Bureau. In the case of absolute quotas, the time of *presentation* of each entry is to be reported. Subdivision (f) provides that the time of *presentation* of an entry shall not precede the time when the carrier reaches the port.

Plaintiff relies particularly upon subsection (a) and claims that, for quota priority purposes, it requires only that an entry in proper form be tendered to the collector. When this subsection is read with subsection (e), however, it becomes clear that tender of an entry in proper form is a first and general requirement applicable to all quota situations and that, where a quantitative quota is nearing fulfillment, priorities will be determined as of the exact time of official acceptance of the entry.

The term "official acceptance" is one that has been used from time to time by customs officials and has a meaning different from that of filing or presentation of an entry. For instance, section 8.4(*b*) of the Customs Regulations of 1943, as amended, provided:

(*b*) The date of entry is the date on which an entry is officially accepted by a collector of customs. A formal consumption entry or a warehouse entry shall be officially accepted on the date that the importer has completed the performance of all acts required of him which are necessary to secure the issuance of a consumption entry permit or a permit for the transfer of the merchandise to a bonded warehouse. The date of official numbering, which shall be noted on each entry, shall in each case correspond with the date of acceptance, thus establishing the date of entry. * * *

The corresponding provision in the present regulations is section 8.4(d), *supra*, which provides, in accordance with section 315 of the tariff act, as amended, that an entry transaction is completed by filing the proper documents and depositing the required duties and taxes with the designated customs officials.

It seems evident that the term "official acceptance," as used in section 12.50(e) of the present regulations, was intended to mean final acceptance by customs officials after completion of the entry transaction by filing the proper documents and depositing estimated duties with the designated officials. One method of procedure was set up where a quota was expected to be filled at the opening thereof and another where a quota was nearing fulfillment. In the former case, the entries were considered to have been made simultaneously. Presumably, any that were not in proper form or unaccompanied by payment would be rejected later and would not participate in the quota. In the case of quotas nearing fulfillment, however, only the entries

which were accepted were reported to the Bureau with the exact time of acceptance. From the reports it receives from the various ports, the Bureau ascertains the priorities and determines which merchandise is dutiable at the quota rate. Any entries not in proper form or rejected for any reason are eliminated from consideration in the collector's office and are not listed in the report to the Bureau. If this procedure is followed in all ports, as is to be presumed, in view of the regulations, the priorities would be the same whether proper entries are noted in order of presentation or in order of acceptance, unless the time lapse is much greater in some ports than in others. Plaintiff claims, in its brief, that this might occur, but no facts are in the record to show that there actually was any difference in time lapse among the ports or that such variance, if any, resulted in a difference in priorities to the detriment of the plaintiff. The cutoff time might have been earlier if all entries had been stamped with the time of presentation rather than the time of acceptance, but the same merchandise would have been included in the same order. There is nothing before us from which we can determine that, even if another procedure had been followed, plaintiff's merchandise would have fallen within the quota.

In view of section 315 (a) of the Tariff Act of 1930, as amended, and the regulations issued thereunder, merchandise is not entered, or withdrawn from warehouse, for consumption until the documents have been deposited with the customs official designated to receive them and the duties have been paid to the official designated to receive the money. This was what was comprehended by the term "official acceptance" in section 12.50 (e) of the regulations. Since the applicable rate of duty is the one in effect at the time when an entry has been completed, whether or not particular merchandise falls within a quota must also be determined as of that time. Thus, determination of quota priorities on the basis of the time of acceptance and completion of the entries is reasonable and proper and in accordance with the statute.

For the reasons stated, the instant merchandise does not fall within the quota for woven fabrics and is not entitled to the lower rate of duty. The protest is overruled and judgment will be rendered for the defendant.

### DISSENTING OPINION

RICHARDSON, Judge: All of the cases cited by the majority opinion in support of the proposition that merchandise is not considered entered, or withdrawn, for consumption until the transaction is completed by the payment of estimated duties and the issuance of a delivery permit were decided before the Customs Simplification Act of 1953, except the case of *Cities Service Oil Co.* v. *United States*, 40 Cust. Ct. 558, Abstract 61956. In the latter case, decided in 1958, the importer was contending that "in addition to other requirements,

merchandise is not entered for consumption until the entry is *completed by the payment of estimated duties.*" [Italics added.] In the present case, the estimated duties were paid when the entry was filed.

When the Congress was considering the wording of the Customs Simplification Act of 1953, it was of the opinion that the decided cases did not give a clear meaning to the term "entered." See Senate Report No. 632 on the Customs Simplification Act of 1953, United States Code, Congressional and Administrative News, 83d Congress, first session, volume 2, pages 2283, 2287. This report refers to the last case before the change in the law—the case of *United States* v. *Mussman & Shafer, Inc.*, decided by the United States Court of Customs and Patent Appeals on January 14, 1953, C.A.D. 506, in which the Government contended that the term "entry," "refers only to the filing of the entry document with the collector," and the importer contended that the goods were not entered until the transaction was complete by the payment of duties and "the issuance of an unconditional delivery permit passing control of the goods to the importer or owner." The court sustained the position of the importer. What remained to be done in the *Mussman & Shafer, Inc.*, case before the transaction could be completed was the drawing of a sample and the measuring of some plywood. In the case now before the court, nothing remained for the Government to do to the merchandise. It was ready for delivery. Had the Congress wished to incorporate the principle of the *Mussman & Shafer, Inc.*, case it would have been a simple matter to have lifted the applicable language from the case and said goods shall be entered when "the transaction is complete by the payment of duties and the issuance of an unconditional delivery permit passing control of the goods to the importer or owner." Instead, it adopted the view that the goods are entered when "any estimated or liquidated duties * * * have been *deposited* with the appropriate customs officer in the form and manner prescribed by regulations of the Secretary of the Treasury." [Italics added.]

Pursuant to section 315, Tariff Act of 1930, as amended by the Customs Simplification Act of 1953, the Customs Regulations were amended to incorporate the view urged by the Government in the case of *United States* v. *Mussman & Shafer, Inc., supra.* See customs regulation 8.4(d) which states that "Entry is made under * * * a formal consumption entry * * * when the specified form is properly executed and *deposited,* together with any related documents required by any provision of these regulations to be *filed* with such form at the time of entry, at the port or station with the customs officer designated to receive such entry papers and any duties or taxes required to be paid at the time of making such entry have been deposited with the customs officer designated to receive such monies. The rate or rates of duty applicable to merchandise entered under any such

entry shall be the rate or rates in effect when the making of the entry as stated above is *completed*, except as provided in section 315(a) (2), Tariff Act of 1930, as amended." [Italics added.]

The words *deposited* and *filed* in the regulations are used interchangeably, and it is submitted that the transaction is *completed* when the necessary documents are *filed* with the check containing the correct amount of duties due.

Regulation 12.50(a) provides that until an entry has been *filed* in proper form, merchandise shall not be regarded as entered for purposes of quota priority. Conversely, then, when an entry covering quota merchandise has been filed in proper form, such merchandise shall be regarded as entered for such purposes. This being so, the answer to the question of whether the involved merchandise was entered for consumption within the quota period is made to depend upon a determination as to when the covering entry was filed in proper form, within the meaning of regulation 12.50(a), *supra*.

Plaintiff contends that the filing was accomplished at the time the entry was submitted to the collector by placing it in the tray designated by that official for such purpose. It appears to be the position of the defendant that, in view of the provisions of customs regulation 12.50(e), *supra*, the instant entry was not filed until it had been officially accepted by the collector as evidenced by the time-stamp thereon. Defendant argues that official acceptance presupposes official examination and approval; that, therefore, such acceptance could not have taken place when the entry was deposited in the tray, for, at that time, it had not been examined by customs officials for the purpose of determining whether it was in proper form. Defendant cites no authority in support of its position that official acceptance of entries for filing necessarily presupposes official examination and approval.

In a situation like the instant one, where the filing of the entry in proper form effects the entry of the merchandise, the application of defendant's theory would have the very real effect of taking it out of the control of the importer and placing it within the power of the collector to determine when such merchandise should be regarded as entered. It would make the entry of the merchandise dependent upon such variable factors as the number and efficiency of the customs employees performing the processing function, the volume of business, and the like. In fact, the supervising entry officer at International Airport testified, upon cross-examination, that, dependent upon the volume of business and the number of personnel on duty, a period of 15 minutes to 2 hours might elapse between the time entry papers are deposited in the tray and the time they are stamped by the cashier. This is of particular significance where, as here, a quota is nearing fulfillment and, from the standpoint of the importer attempting to

enter quota-class merchandise, time is of the essence. I do not think such a result was intended.

Moreover, even under the theory advanced by defendant that there must be a determination as to whether the entry is in proper form prior to acceptance by the collector, I am unable to find any justification for delaying acceptance to the point where the entry is presented to the cashier, for, according to the evidence, under the processing procedure in effect at the collector's office at International Airport, the foregoing determination is not made by that official, but, rather, is made by the examining entry clerk, who approves or rejects the entry.

It is my opinion that "filed," as it is used in regulation 12.50(a), is to be given the meaning ordinarily attributed to the word as it relates to documents. A document is "filed" when it is placed in the proper official's custody by the party charged with such duty, or, as is sometimes stated, when it is *delivered* for that purpose to the proper official and *received* by him. The undisputed evidence in this case establishes that the entry covering the instant merchandise was delivered to the office of the collector of customs at International Airport on July 25, 1957, and, at a time prior to 4:07 p.m. on that date, placed in the tray designated by that official for the receipt of entries. Since the collector elected to adopt the procedure of having the entries deposited in a tray when they were presented for filing, in lieu of having them handed to a designated official, such deposit constituted receipt by him. Therefore, it would appear that when the entry, together with the accompanying check, was placed in the tray on behalf of plaintiff, it was filed within the contemplation of regulation 12.50(a), *supra*, for, at that time, it was *delivered* to the collector for filing and *received* by him. Inasmuch as the ordinary and accepted meaning of "receive" is synonymous with that of "accept" (see *Standard Oil Co. of Indiana* v. *United States*, 164 F. 376, 390), I am of the opinion that the instant entry was accepted by the collector, within the meaning of regulation 12.50(e), at the time it was received. I, therefore, agree with the plaintiff that, in view of the provisions of regulation 12.50(e), *supra*, which require that the exact date, hour, and minute of official acceptance be noted on each entry when any tariff-rate quota is nearing fulfillment, the time-stamp should have been placed on the involved entry when it was placed in the tray.

Under the circumstances of this case, I am convinced that the foregoing conclusion is not only legally sound, but is consistent with the spirit of the regulations governing quota merchandise, as exemplified in regulation 12.50(d), which relates to the filing of entries and withdrawals at the opening of a quota period, and reads, in part, as follows:

* * * All importers who are present to file entries or withdrawals when the quota opens shall be given equal opportunity to do so and, if necessary, special

arrangements shall be made so that all such entries may be presented at the exact moment of the opening of the quota. * * * All entries and withdrawals so presented in proper form shall be considered to have been presented simultaneously, even though some time may be required for checking purposes.

I agree with the plaintiff that this regulation specifically recognizes the time lapse from the moment the entry is presented to the collector until it has been checked, and is careful to preserve any priority right the importer has created, by the act of presenting his entry at the opening of the quota period.

Plaintiff avers and it is not disputed that the entry covering the instant merchandise was in proper form at the time it was filed prior to 4:07 p.m., July 25, 1957, the time at which the quota was filled. It is established that the check for estimated duties, though not certified, was secured by bond, and was acceptable to the collector. I am, therefore, of the opinion that the merchandise in issue was entered for consumption prior to the fulfillment of the tariff-rate quota established for such fabrics for the calendar year 1957 and that duty should have been assessed thereon at the rate of 37½ cents per pound and 25 per centum ad valorem under paragraph 1109(a), as modified by T.D. 51802.